(174 App. Div. 363)

GREENWOOD v. LUKE A. BURKE & SONS CO., Inc.

(Supreme Court, Appellate Division, Second Department.    October 6, 1916.)

NEGLIGENCE ⬥134(1)—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to support verdict for plaintiff surveyor, who alleged injuries by fall from plank over sewer trench, when, as he alleged, he was knocked therefrom by the swing of a door on a concrete mixer at the edge of the trench.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 267; Dec. Dig. ⬥134(1).]

Thomas and Stapleton, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by John W. Greenwood against Luke A. Burke & Sons Company, Incorporated. From judgment for plaintiff and order denying motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON and PUTNAM, JJ.

Bertrand L. Pettigrew, of New York City (Walter L. Glenney, of New York City, on the brief), for appellant.

Martin T. Manton, of New York City, for respondent.

JENKS, P. J.  The defendant, in course of construction of a sewer, had sunk a shaft 35 feet deep, and had placed a mixer close to the edge of the shaft to dump concrete into it.  The mixer was worked by a gasoline engine, and the engine was covered by a sheet iron housing provided with doors.  A plank 10 inches wide was placed in front of the mixer and so close to it that when one of the doors was open it interfered with passage over the plank.  It was testified that the purpose of the plank was to permit the man in charge of the mixer to crank the engine, but that some of the men used to walk upon it.  The plaintiff, a civil engineer of the city of New York, had been detailed to lay out the lines of this sewer construction.  He testifies that about 11:30 a. m. of May 16, he went out upon this plank.  At this time several of his subordinates were down in the shaft.  After he had stood there for a short time, he testifies that he lost his foothold, and was compelled to jump from this plank in his attempt to catch some of the timbers in order to break his fall, but that he failed and fell into the shaft, to his severe injury.  He complains that the defendant was negligent in that the door of the mixer, when last closed before this casualty by a servant of the defendant, had not then been secured by the hasp and staple or padlock contrivance which was provided for that purpose, and although it was closed when he went upon the plank, it soon obeyed its "tendency" to swing open, and did so, to strike him on the back so that he lost his foothold.  In addition to his testimony that the door was closed when he went upon the plank, his witness Butler, in charge of the mixer, testifies that in order to pass by the mixer he had closed this door ten minutes before the casualty, but that

he had "just slammed it," and had not secured it by its said fastenings. And Butler also testifies that he saw that the door was shut when the plaintiff went upon the plank, but when he looked again, at the time of the accident, he saw that the door was open. The latter time is specified by Butler as the time when he saw the plaintiff's "shadow" as he fell into the shaft. It is peculiar that Butler should have noticed the door at such a moment, and it is to be noted that in his sworn statement, made shortly after the casualty, wherein he testified that he intended to tell the truth, he deposed that on this occasion he had been cleaning the engine of the mixer about half an hour before the casualty, and had left this door open, as he had to hurry to give signals at the derrick, and that he did not notice the door thereafter until the casualty had occurred. There is no direct proof that the plaintiff was struck by this door, save from the lips of the plaintiff.

It must be borne in mind that the plaintiff testifies that he stood with his back to the door, and that the blow came from behind. In the nature of things, it is not necessary to seek a foreign cause for this loss of equilibrium. It is not extraordinary that a man should himself lose his balance while standing upon a plank 10 inches wide that extends over a pit 35 feet deep. Such station, under such circumstances, is much more perilous than if the plank rested level with surroundings. The position of the plaintiff just before the casualty, as testified to by him, tended to increase his peril; for he was directing one of his subordinates, who was in the shaft 15 feet below, and almost beneath the plaintiff, where, in his surveying work, to drive a nail. Naturally the plaintiff would have bent his body, or at least his head, in order to determine this question. And the plaintiff in his direct testimony says that he was "bent forward in instructing," but "only just about as much as I would in standing to talk to a man about that position." But, as I have said, "that position" was "almost below" the plaintiff.

Thus far I have discussed the possibility of the loss of foothold without a foreign cause, like, e. g., a blow. Now I shall consider the proof that there was a blow from this door. The plaintiff's own words were:

"Something hit me in the back. Judging quickly from the sound of it, I knew it was metal, and I turned quickly to see what hit me so hard, and I saw it was the door. It had swung open and hit me in the back—about the middle of my back."

The narrative in itself is entirely natural. A person feels a blow upon his back and turns quickly to ascertain the cause. But the narrative must be considered with the surrounding conditions. The narrator stood at the time upon a plank 10 inches wide and over a pit 35 feet deep. 'If the blow caused him to lose his foothold, if he realized at once that the consequence was a fall into the pit, it would seem that his first impulse would not be that of curiosity, but of self-preservation; that his very instinct would be to keep himself from such fall. With this consideration in mind, I cite another part of plaintiff's direct testimony:

"Q. What happened to you when it struck you in the back? A. I was knocked forward. Q. Then what? A. The first thing I knew I started to jump, and I jumped as far as I could to catch a timber on the opposite side

of the shaft, about 10 feet away.   Q. Did you succeed in catching it?   A. I hit it.   I don't remember what happened to me after I hit it."

Upon cross-examination he was asked:

"Q. When you felt yourself struck from behind, what did you do?   A. Turn quickly (indicating).   Q. What effect, if any, did it have on you when it hit you?   A. Pushed me forward.   Q. When it hit you did you fall?   A. It pushed me over far enough so that I could not get back (indicating).   Q. And there was down below you a chasm 35 feet deep, was there?   A. Yes. Q. And out of curiosity you looked over your shoulder to see what had hit you?   A. I did."

It seems to me unnatural that, after he had been knocked forward by the blow so that he could not get back and the first thing he knew (i. e., that occurred to him) was to leap at once therefrom to save himself from a fall to the bottom of the shaft, before he jumped he actually turned so as to see the door behind him—for this was a physical act, not a flash of thought like that which suggested from the sound that the door had struck him.   I think that the testimony that the plaintiff turned to see the door behind him is improbable.   In saying this, I do not impute deliberate perjury, for it is not in my mind.   Often one convinces himself that he knows, as the cause of an effect, that which could produce the effect, and analysis reveals, not his knowledge, but his surmise.   In The Lepanto (D. C.) 21 Fed. 651, the court said it was scarcely credible that while the two ships were afoul or yet not out of danger, the captain of one of the ships should turn aside to look at the clock.

The version of the plaintiff is not uncontradicted.   Miller, then a foreman of the architect and now out of any relation to either party, who stood near the shaft and who saw the accident, testifies that the plaintiff stepped back from a platform, not from the plank, lost his footing, clutched at the open door to save himself, when the door swung away from the plaintiff and he fell, carrying the plank down with him.

There is, moreover, a bit of evidence which should not be disregarded.   Burke, Jr., the treasurer of the defendant, testifies that he called upon the plaintiff in the hospital on the Tuesday or Wednesday after the Saturday of the accident, after plaintiff's leg was in the plaster cast, and was with him for half an hour.   The plaintiff seemed to talk intelligently:

"Q. Did you have any talk with him about how the accident happened? A. Why, no.   I did not ask him any questions about the thing.   He only asked me how it happened.   I said: 'I do not know.   I did not see it.'   Q. Did he say anything as to what he knew?   A. No.   He asked me how the accident happened.   He said, 'How did it all happen?'   I said: 'I do not know really.   I did not see the accident.'"

He was not interrogated upon this point upon cross-examination, and although the plaintiff was thereafter called upon rebuttal, he was not asked with reference to the interview nor as to the details thereof.

I advise that the judgment and order be reversed, and that a new trial be granted so that the case may be submitted to the consideration of another jury.

If the proof had justified the finding of the jury that the plaintiff fell or leaped in consequence of a blow from this door, then there would be presented by this record the further question whether the defendant was negligent towards this plaintiff, which would involve consideration of defendant's maintenance and regulation of the door with respect to the duty, if any, which it owed to the plaintiff in the place which he had assumed. This question would require a discussion of the proof on this trial. But it is not only unprofitable to discuss such proof, but, in view of the new trial, unwise to do so for reasons which are of general application.

The judgment is reversed, and a new trial is granted, costs to abide the event.

CARR and PUTNAM, JJ., concur. THOMAS and STAPLE-TON, JJ., vote to affirm.